REGAN, Judge..
Plaintiff, Mrs. -Zulma-Bourg, widow of Hilarus G. Bourg, ■ and' the administratrix-of his succession, instituted'this--suit-for damages in- the amount of $30,000 for the wrongful death of her husband in conformity with the provisions of Section 33 of the Merchant Marine Act of 1920, known as the Jones Act, 46 U.S.C.A. § 688, against defendant, J. Ray McDermott & Company, Inc., his employer.- ■
Defendant answered and pleaded the exceptions of vagueness- and of no right or cause of action, which were' maintained. From that judgment plaintiff appealed to *226 this court. We were of-the opinion that while the judgment maintaining the exceptions of no cause or right of action was correct, we concluded that the matter “should be remanded • to the end that the plaintiff may be afforded an opportunity to make such additional allegations as the facts may justify. * * * A suit should not be dismissed on an exception of no cause of action where it is possible that by amendment a cause of action may be stated.” Bourg v. J. Ray McDermott & Co., Inc., La.App., 52 So.2d 717, 720. Following the decision of this court plaintiff sought writs from the Supreme Court which were refused and thereafter plaintiff amended her petition and the case was tried in the District Court on its merits, resulting in a judgment in favor of defendant from which plaintiff has again prosecuted an appeal.
The original plaintiff, Mrs. Zulma Bourg, died on October 11, 1953, and her two daughters, Mrs. Robert O’Rear and Mrs. Jane- Richoux, were made parties plaintiff.
The record reveals that at approximately ten-thirty o’clock p. m. on July 27, 1949, Hilarus G. Bourg, the Captain of the tug Southwind, owned and operated by the defendant, instructed Honoré Eskine, Jr., a deckhand, to summon Noel Cretini, First Mate of the .tug. When Cretini arrived in the pilot house Bourg informed him that the steering wheel had struck him in the chest. Cretini, in obedience to the order of the Captain, then took possession of the helm and shortly thereafter Bourg retired to his cabin, where he was found dead at about five o’clock on the morning of July 28, 1949. The revelation of the facts showed that around one o’clock á. m. on July 28th, Bourg, who was afflicted, with a pre-existing .heart ailment, called a deckhand and- caused him to procure some pills which Bourg had in his quarters. He took one of these pills. From the mpment that Bourg asserted that he-had been struck by the steering wheel until the time of his death, Cretini had interrogated him on several occasions as to whether he desired medical assistance and on each occasion he declined.
Plaintiffs contend that the vessel was not seaworthy in that the steering thereof became unmanageable causing the wheel to turn violently and, in the course thereof, struck Bourg with great force in the lower portion of his body; that the vessel had a tow which was beyond the capacity of the tug and, finally, that it was an exemplification of gross negligence on the part of the mate, Cretini, in not providing medical assistance to Bourg who, at the instant of the Captain’s illness, became master of the Southwind. -The vessel was in an inland waterway and medical assistance could have been procured within a relatively short period of time.
Defendant, on the other hand, insists that it was completely free of any negligence in the premises.
We are of the opinion that the judgment of the trial court was correct. There is not a scintilla of evidence in the record which would even indicate any defect in the steering mechanism or in any of the other equipment of the Southwind and after the Captain left the helm in the possession of Cretini the tug continued on its journey without mishap. The record shows the tug to have been seaworthy in every respect.
Plaintiffs endeavored to prove that the' tow was beyond the capacity of the South-wind, but not only did the testimony reveal that there were two tugs handling one barge, but that on many prior occasions the Southwind alone had towed this same barge.
The charge that the defendant failed to furnish medical care to Captain Bourg is -without merit. In our recent consideration of this case we observed:
“The deceased was himself the master of the vessel. He was in full charge. If he required medical atten-tiqn it was his duty to look for it, or to ask the mate to stop the vessel and *227 obtain a physician. Obviously, he could have done this ***.** surely defendant could not be held liable for failure to furnish assistance under such circumstances.” La.App., 52 So.2d 717, 719.
Since the rendition of that judgment we have had the benefit of the testimony of Cretini to the effect that Captain Bourg was in full charge of the tug up until the moment that he died and that he, Cretini, would have cut the tow from the tug and have taken Captain Bourg to Morgan City, which would have taken about one-half hour, but that he had no authority to do so inasmuch as the Captain had, on several occasions, from the moment of his injury, refused medical assistance. At this focal point of Cretini’s testimony and of the medical expert, the trial judge thoroughly satisfied himself that the Captain was in full possession of his mental faculties and that he was capable of making a rational decision.
In our opinion the issue herein was greatly resolved in defendant’s favor by virtue of the conclusions emanating from the Coroner’s inquest performed at Houma, Louisiana, wherein it was revealed that the cause of death was myocardial degeneration with dilatation; old anterior infarct, left ventricle, with other complications such as mild cirrhosis of the liver, general edema of both lungs, edema of both lower extremities and no evidence of any injuries.
The death certificate also reveals that the cause of death was acute dilatation of the heart, myocardial degeneration with decomposition, old anterior infarct left ventricle. ' ■ ■
When we formerly considered this case on appeal from a judgment maintaining the exceptions we were then and are now of the opinion that the doctrine of res ipsa loquitur is inapplicable to this case, and it is discussed further only for the reason that plaintiffs’ counsel devoted large part of his brief and oral argument to this subject. We said:
“Here-there is nothing to eliminate the possibility, or rather probability,that there must have been fault on the part of Bourg himself who was in charge of the steering, wheel and-in charge of the vessel, and, furthermore, as -we have already said, the ‘thing’ which caused the injury was -not only not under the exclusive control of the defendant, but it was under the exclusive control of plaintiff’s husband.” La.App., 52 So.2d 717, 719.
“The gist of an action under the Jones Act is negligence.” 46 U.S.C.A. § 688. It is only upon a showing of negligence that a seaman may recover damages under the Jones Act.
In Pittsburgh S. S. Co. v. Palo, 6 Cir., 64 F.2d 198, 200, a seaman was injured while working on a rudder chain. Suit was brought under the Jones Act. The court was of the opinion:
“But conceding that the risk of injury was not assumed in the present case, all the authorities seemingly proceed upon the hypothesis that, in order to maintain an action under this section, negligence (as defined by the common law) must be shown. Cf. Panama R. R. v. Vasquez, 271 U.S. 557, 559, 46 S.Ct. 596, 70 L.Ed. 1085; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 324, 47 S.Ct. 600, 71 L.Ed. 1069; Lindgren v. United States, 281 U.S. 38, 46, 50 S.Ct. 207, 74 L.Ed. 686. The shipowner is not an insurer of the safety of his seamen, and' the burden of establishing negligence rests upon plaintiff. Burton v. Greig, 5 Cir., 271 F. 271.”
In Smith v. United States, 5 Cir., 96 F.2d 976, 978, plaintiff was standing -on a cargo batten when it gave way, causing him to fall. He relied on: First, the duty of the ship’s carpenter to keep battens in repair, and second, res ipsa loquitur. The court said:
“The doctrine is not applicable in any case unless, by a process of probable reasoning, the facts and circum *228 stances ■ point out' the -wrongdoer*, the tortious character, of his act,:and ex-, elude other probable causes of the injury. The doctrine is not proof and. does not supply: a' want of proof. It. is a rule of interpretation' by- which evidence of facts is made to.speak the logical- 'Conclusions naturally • flowing therefrom.” • ■ " " ■ . -<■ >.
For the reasons assigned the judgment appealed from ip affirmed.
Affirmed.